IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CLIFFORD LINNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 10-cv-3173 |
| | ) |
| BRIAN ADAMS, NEIL ROSSI, and | ) |
| TARA OWEN, | ) |
| | ) |
| Defendants, | ) |

## OPINION

The Defendants' Motion for Summary Judgment [d/e 14] is allowed for the following reasons.

## I.

### A.

In 2009, the Illinois Department of Corrections (IDOC) had four vacancies for training positions (Staff Development Specialist I) at its Training Academy. IDOC planned to install three people to fill the vacancies.

The process was conducted pursuant to the guidelines established in *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). In Illinois, *Rutan* hiring is highly regulated. *See, e.g.*, Ill. Exec. Order(Admin. Order No. 2),

1

*Directive to State Agencies, Updating Guidance for Compliance with the Rutan Decision* (Dec. 10, 2009), available at http://www2.illinois.gov/ Government/ExecOrders/Documents/2009/adminorder2009-2.pdf (last visited Oct. 4, 2012).

The positions were first made available, under the relevant collective bargaining agreement, to certain union members who had the right to "bid" on the positions. None of these individuals accepted the positions.

Then the three positions were publicly listed, and employees of IDOC, other state agencies, and the general public were allowed to apply for the positions. After submitting their application materials, most state employees applying for the positions were assigned a grade by the Illinois Department of Central Management Services (CMS).[1]

Next, the list of qualified applicants was forwarded to the Training Academy. Interviews were scheduled for January 28, 2010, and February 1, 2010. Ten individuals were invited to interview, including Plaintiff Clifford L. Linne.

B.

---

[1] An applicant would not be assigned a grade if accepting the job would technically be classified as a demotion.

Defendants Bryan Adams and Tara Owen conducted the interviews and prepared the interview evaluation sheet.[2] At that time, Adams was Manager of Staff Development and Training. Adams would supervise the individuals eventually promoted. Owen was, and remains, the Hiring Process Manager for Public Safety Shared Services.[3] Owen's job duties include posting employment opportunities and interviewing applicants.

The evaluation sheet for the interviews contained talking points and a script to be read at the beginning of each interview:

> Note to the Interviewer:
>
> ➢ After greeting each candidate in the same manner & asking him/her how he/she wishes to be addressed throughout the interview, escort the candidate to the interview area.
>
> ➢ Introduce the candidate to the interview staff, stating interviewers' names and official titles. Please be equally cordial with every candidate and keep 'pre-interview' and 'post-interview' conversation brief and professional.
>
> ➢ Offer the job description to the candidate and allow a few minutes for the candidate to read the <u>front and back</u> of the description.
>
> ➢ Then read the following script:

---

[2] Owen was the principal drafter of the evaluation sheet, and Adams reviewed it and provided feedback.

[3] Owen is an IDOC employee, but Illinois state public safety agencies share human resources functions. As a result, Owen's job duties also involved the Illinois Department of Juvenile Justice, the Illinois State Police, the Office of the Illinois State Fire Marshal, and the Illinois Emergency Management Agency.

> "This will be a structured interview process.
>
> To identify the most qualified candidate, and to ensure the process is fair and objective as possible, we have developed a structured questionnaire. The questions that we ask you are divided into separate sections that are related to the duties of this position. We will be documenting and evaluating your responses based upon certain criteria which we will state to you at the beginning of each section. Please don't let the note taking distract you.
>
> We will be asking the <u>same questions</u> in the <u>same order</u> for each candidate. We <u>CANNOT</u> clarify, rephrase, or explain a question. We <u>CAN</u> repeat the question so you can think about it and your response.
>
> Although you may have submitted your application to us for file purposes, <u>assume we know nothing about you or your background</u> when you are responding. The interview will be <u>scored by how well you answer each question</u>. We <u>do not draw from any other information</u> when rating your responses. If you wish, you may take notes; however, any notes taken during the interview must be left in this room."

Evaluation Sheet [d/e 18-2], page 58.

The evaluation sheet listed fourteen questions, some of which were specific and others were open-ended. Each question contained the numbers 1, 2, 3, and 4, and a space to write in the candidate's answer. The questions were broken into five categories that were assigned different weights. The end of the evaluation sheet contained additional scripted concluding statements.

4

Adams and Owen testified that they wrote the candidate's responses in the blanks and waited until the candidate had left the room to assign a numeric score (between one and four) for each response. They further testified that they did not consult with each other regarding scoring, but that after the candidate left the room they did sometimes review together responses.

Adams and Owen testified that while the scoring was partially objective, it was mostly subjective (including the way in which the candidate relayed the information). After the interviews were concluded and the evaluation sheets were filled out, the scores were tabulated, and the individuals receiving the top three interview scores were offered the Staff Development Specialist I positions.[4] Plaintiff Linne was not among the top three scores, and was not offered a position.

C.

Plaintiff Linne initiated this § 1983 action on July 16, 2010, suing Defendants Adams and Owen, and Neil Rossi, Regional Manager of IDOC's Correctional Industries. *See* Complaint [d/e 1]. The Plaintiff alleged that "he

---

[4] In other words, the documents submitted put an applicant into the running, but it all came down to interview performance.

was passed over for a promotion on the basis of political affiliation." *See id.* at ¶ 3.  Linne further alleged the following:

> Linne is not politically active and did not have a political sponsor in Democratic party.
>
> Linne was interviewed for the positions in question on January 28, 2010.  Linne was one of the three most qualified applicants and should have been awarded on of the Staff Development Specialist I positions if the positions were awarded not based upon political affiliation.
>
> Political considerations were used in determining who would be selected for the Staff Development Specialist I positions.  As a result, Linne was not offered one of the positions and at least two of the three positions were awarded to individuals who were less qualified.

*Id.* at ¶¶ 12-14.

## II.

42 U.S.C. § 1983 prohibits individuals acting under color of state law from violating the constitutional rights of others.  Basing a promotion on political affiliation is an infringement of a public employee's rights guaranteed by the First Amendment.  *Rutan*, 497 U.S. at 73.

The United States Court of Appeals for the Seventh Circuit has stated the following regarding this issue: "For a quarter century now, well-meaning Illinois citizens periodically have turned to the courts in attempts to rid the state of an age-old rite: rewarding political supporters with the spoils of power,

notably, but not exclusively, public employment. Despite these efforts, patronage hiring is alive and well in Illinois." *Tarpley v. Keister*, 188 F.3d 788, 789 (7th Cir. 1999) (citations omitted).

### III.

"Summary judgment is appropriate when the evidence submitted, viewed in the light most favorable to the non-moving party, shows 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009) (quoting Fed. R. Civ. P. 56(c) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to survive summary judgment, there must be sufficient evidence that a reasonable factfinder could return a verdict for the nonmoving party. *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406-407 (7th Cir. 2009).

"[A] motion for summary judgment requires the responding party to come forward with the evidence that it has - it is the 'put up or shut up' moment in a lawsuit." *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (internal quotation marks and citations omitted). Although inferences are

drawn in favor of the nonmoving party, inferences relying on speculation or conjecture are insufficient. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

IV.

The parties agree that there is insufficient evidence to link Defendant Rossi to the promotion decision. The Court agrees that there is no evidence to suggest that Defendant Rossi had any involvement. Accordingly, Rossi is entitled to summary judgment.

V.

The parties dispute whether the remaining Defendants (Adams and Owen) are entitled to summary judgment.

There is not one shred of evidence that politics had anything to do with the personnel decision complained of in this case. The Plaintiff testified that he does not know the political affiliation of the three individuals who received the promotion. While the Plaintiff was aware of Adams' political affiliation, he testified that he is unaware of Owen's political affiliation.

The Plaintiff's assertion that he was one of the three most qualified applicants is without support.  The Plaintiff testified that he does not know how the interviews went for the three individuals who received the positions.  He further testified that he did not know the educational background of the three people who were promoted.  He had trained with two of the successful applicants, but was largely unaware of their qualifications.

Simply put, there is no support whatsoever for any of the Plaintiff's claims.  The Plaintiff argues that there is circumstantial evidence that politics played a role in the promotion decision.  Specifically, he points to Owen's deposition testimony.

During her testimony, Owen could not justify how she assessed applicants and assigned interview scores.  The Court notes that much of the deposition testimony reflects that Owen recalls very little about the interviews conducted in the case, which took place almost two years before the deposition.  Furthermore, Owen repeatedly testified that the assignment of points was based not only on the substantive content of the answer, but also the way it was delivered.  Such an evaluation is highly subjective.

So, Defendant Owen cannot fully rehearse, explain, or rationalize the way she assigned scores to interviewees almost two years after the interviews. If the Plaintiff had other circumstantial evidence to suggest improper personnel practices were occurring, this might be relevant. But the Plaintiff has nothing else. The Plaintiff has pointed to no circumstantial, let alone direct, evidence that politics was involved in the process.

Accordingly, Defendants Adams and Owen will be awarded summary judgment because no rational jury could find that the Plaintiff's rights were violated.

Furthermore, since there is no evidence that Defendants Adams and Owen used politics as a factor in the interview process, they are entitled to qualified immunity.

VI.

*Ergo,* the Defendants' Motion for Summary Judgment [d/e 14] is ALLOWED.

Judgment shall be entered in favor of Defendants Adams, Rossi, and Owen, and against Plaintiff Linne.

IT IS SO ORDERED.

ENTER: October 4, 2012

FOR THE COURT:                    */s/ Richard Mills*
                          _____
                                    Richard Mills
                             United States District Judge